WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—November, 1888.

MATTER OF HADDEN.

*In the matter of the application for the probate of the will of JOHN HADDEN, deceased.*

Where a testator, owning various stocks and bonds, bequeaths to different legatees certain sums of money "out of any stocks or bonds that I may own at the time of my death, the same to be reckoned and counted at their par value, dollar for dollar," the legacies are general, not specific, and it is the right and duty of the executors to select the bonds for the legatees.

CONSTRUCTION, upon probate, of the will of John Hadden, deceased.

On the probate of the will, the court was requested to construe some of its provisions. The testator at the time of his death, owned the following stocks and bonds whose relative market values, when the question was submitted, were thus stated:

| | |
|---|---|
| $5,000 St. Louis, Vandalia and Terre Haute R. R. Bonds, par value $100, worth, | 114 |
| $5,000 Lake Erie and Western do. par value $100, worth | 107½ |
| $1,900 N. Y. Cen. & H. R. shares par value $100, worth | 110 |
| $400 Amer. Express shares par value $100, worth | 111 |

By the third clause of his will he says, "I give and bequeath to my said son, Charles E. Hadden, $4,000 in the stocks and bonds, out of any stocks or bonds that I may own at the time of my death, the same to be reckoned and counted at their par value, dollar for dollar." By the fifth clause he bequeathed to his son, Beverly W., a life interest in the sum of three thousand dollars, in the stocks and bonds, in the same manner, with the income and profits arising therefrom; and, by the seventh clause, he gave to his daughter, Amanda Curtis, three thousand dollars in stocks and bonds precisely in the same manner and language as is used in the bequest to Charles E., except that the word "counted" is omitted. The will contained a residuary clause, by which the residue of his estate was given to his grandchildren, and into which residue was to fall the principal of which Beverly had a life interest, at his death.

ARTHUR T. HOFFMAN, *for* CHARLES E. HADDEN *and* PETER A. WELCH, *executors.*

HENRY PARSONS, *for* FREDERICK W. HADDEN *and others, residuary legatees.*

THE SURROGATE.—It is claimed on behalf of the residuary legatees, that the clauses of the will under

consideration are void for uncertainty, because the stocks and bonds vary in value, and that therefore the will cannot be carried into effect, in this regard, without interfering with the rights of the legatees. It is difficult to see any force in this objection. The persons of the legatees are pointed out with certainty, and the amount given to each is definite, and the manner in which each is to be satisfied, is clearly indicated. The real and important question however, is: Who has the right to select the bonds or stocks for each of the legatees, the executors or the legatees themselves? If the legacies were strictly specific, there could be no room for doubt. For instance, if he had said "I give to Charles E. Hadden four thousand dollars in Vandalia Bonds, which I own at the time of my death, at their par value," and so, had pointed out the precise stocks or bonds he gave to each of the others, the legacies would have been specific, easily satisfied by the executors, and this question would not have arisen.

It is true that it has been said that specific legacies are of two kinds; the first being where a certain chattel is particularly described and distinguished from all others of the same species; as, "I give the diamond ring presented to me by A." This legacy can be satisfied only by the delivery of the identical ring. The second, is, where a chattel of a certain kind is bequeathed, without any designation of it as an individual chattel, as: "I give a diamond ring." This may be fulfilled by the delivery of any thing of the same kind. 2 Mad. Ch. Pr. 7; 8 Toller 301. But this distinction, as will be seen by reference to

the authorities below cited, no longer prevails, and the only kind now recognized is that first above mentioned. The following doctrine, measurably meets the facts of this case. A bequest of a sum of money, or of a sum in government securities must be taken as a legacy of quantity, and is, therefore, a general legacy. This doctrine, it is said, prevails, notwithstanding the testator may have a greater, or the exact quantity of the specific stock at the date of his will. Bronsdon v. Winter, *Ambler* 59. But the word "my" preceding the words "government securities, stock, or annuities" has been several times held sufficient to render the legacy specific. Sibley v. Sperry, 7 *Ves.* 530. So, Chancellor KENT, in Walton v. Walton, 7 *Johns. Ch.* 258, held that a bequest in these words, "I give and bequeath to my nephew all my right, interest and property in thirty shares which I own in the Bank of the United States of America," was a specific legacy. In the case of Robinson v. Addison, 2 *Beav.* 515, where the bequest was of "five and a half shares in the Leeds & Liverpool Canal, and all benefit and advantage thereof," and the will contained two other bequests of five shares each in the same terms, and the testator at the date of the will, owned fifteen and a half shares of that stock, it was held that the legacies were general and not specific; but that if the testator had designated them as "my" shares, the legacies would have been specific; and to the same effect, Tifft v. Porter, 8 *N. Y.* 518.

The facts in this case are peculiar, for although they plainly come within a principle laid down in Ambler, *supra,* and the other cases cited, yet the word "my,"

or its equivalent is used, but the bonds and stocks are not otherwise particularly described, as to whether they are bonds and stocks of any specific railroad or corporation; and another peculiarity distinguishing the case is, that "my" bonds and stocks are those of various corporations, and are given in different sums to legatees, at their par value, when there is a difference in their actual value. At all events, the bequests are not, under the decisions, specific. If they had been made so, there would have been no difficulty in satisfying them. But the question remains, how and by whom is the will, in this respect, to be executed? May it be done by the executors, by delivering to the legatees such bonds and stocks as they may select, amounting at their par value, to the legacy given to each, or have the several legatees a right to select those they will receive?

If it be claimed that the legatees have a right of election, then, it is said in 2 Coke Litt. 145a. when an election is given to several persons, there the first election made, by any of the persons, shall stand. But here, no election is, in terms, given. In Duckmanton v. Duckmanton, 5 *Hurlst. & Norm.* 219, A. having two closes in R., devised one, without specifying which, to his son John, who was the heir-at-law, and one to his younger son George; it was held that John, as heir, had a right of election. Here, it would seem, the right of John to elect, was based upon the sole fact that he was the heir. The case of Jacques v. Chambers, 2 *Collyer C. C.* 435, is substantially like this, except the legacies were declared to be specific. The testator bequeathed to A. the use for life of

thirty shares, out of one hundred and twenty he owned, in the stock of the Great Western Railway, with remainder to his wife and children; and thirty shares to B. There were two classes of shares, thirty-eight having been originally subscribed for by the testator, and eighty-two which had been purchased by him as scrip. There was a difference in value of the two classes of shares in favor of the thirty-eight. The learned Vice Chancellor (BRUCE) in delivering his opinion said : " If the executors have the option of selecting the sixty shares, they may exercise that option by giving the sixty shares out of the eighty-two. If, however, the legatees have the option, they would have the right to exercise it, and probably would exercise it thus: namely, each legatee of the thirty shares would take nineteen of the thirty-eight." In this view that the legatees would probably exercise it by each taking one half of the most valuable shares, there would arise this difficulty, especially in a case where there are three such legatees. They cannot make the selection simultaneously. Some one must make the first selection, and, unless he were utterly indifferent to self interest, which we are scarcely at liberty to assume, he would, doubtless, take those which were regarded as most valuable. Then another would have to select from those which remained, and the third would be left to take the residue, without the opportunity of selection, if there were not more than sufficient to satisfy all, or if there were he would have to select from those already rejected by the others as least valuable. But the vice chancellor also held that the legatee for life, as well as the other

legatee, had that right; he failed, however, to indicate which legatee, if either, should first select. That matter was the subject of discussion in Duckmanton v. Duckmanton, *supra*, as we have seen, and the question was solved by giving the right to John, because he was the heir. Here, however, there is nothing known among us, which will warrant the distinguishing one of the legatees in this case from another. They all stand upon an exact equality, neither having any right of preference. The conclusion reached in the case in Collyer does not seem to be sound, because it appears to be impracticable in execution. The executors are appointed to execute the will—to carry out the intention of the testator. They should deliver the stocks and bonds bequeathed, at their par value, and, if any selections are to be made, they should make them, in a manner that appears to them fair and equitable. It is unnecessary here to say whether their conduct, in that regard, may be a subject of criticism on their final accounting.

Who shall make the selections is, perhaps, of little moment, when we consider that the subjects of the bequests are constantly fluctuating in market value; so that those of most value now, may, in a week hence, take the place of those now esteemed of least value. But, seeing no way in which the legatees can, practically select, it is considered the duty of the executors to perform that act; unless, indeed, a satisfactory solution of the difficulty may be effected, by agreement between them and the legatees.

Decree accordingly.